# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| RICHARD POLAK,<br><br>    Plaintiff,<br><br>vs.<br><br>CITY OF OMAHA, a political subdivision of the State of Nebraska; KERRY ISELIN, ROBERT LANEY, CLINTON GORMLEY, and JOHN DOES 1-100, both individually and officially as officers of the Omaha Police Department;<br><br>    Defendants. | 8:18CV358<br><br>MEMORANDUM<br>AND ORDER |

This matter is before the Court on the Motion to Dismiss, ECF No. 10, filed by Defendants City of Omaha (the City), Kerry Iselin, and Clinton Gormley; and the Motion to Dismiss, ECF No. 13, filed by Defendant Robert Laney. For the reasons stated below, the Motions filed by the Defendants will be granted, in part.

## BACKGROUND

The following facts are a summary of those alleged in the Complaint, ECF No. 1-1, and are assumed true for the purposes of the Motions to Dismiss. In October 2016, Defendants Iselin, Laney, Gormley and John Does 1-100 (referred to collectively as "the Officers") "executed a search against" Polak and removed him from his home. When Polak attempted to surrender, despite not being commanded to do so, he was handcuffed and beaten by the Officers. As a result, Polak suffered injuries, including a black eye, and his personal property was destroyed.

Polak filed a Complaint in the District Court of Douglas County, Nebraska, and Defendants removed the case to this Court. Polak's Complaint asserts causes of action against the City and the Officers, in their individual and official capacities, under 42 U.S.C. § 1983 and state tort law.

The City, Iselin, and Gormley seek dismissal of Polak's claims pursuant to Fed. R. Civ. P. 12(b)(6). Laney seeks dismissal pursuant to Fed. R. Civ. P. 12(b)(1) based on sovereign immunity, arguing that he was acting under color of federal law, not state law, at the time of Polak's arrest. Laney also seeks dismissal pursuant to Fed. R. Civ. P. 12(b)(6), arguing he is entitled to qualified immunity.

## STANDARDS OF REVIEW

**I. Motion to Dismiss Pursuant to Fed. R. Civ. R. 12(b)(1)**

"In order to properly dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the complaint must be successfully challenged on its face or on the factual truthfulness of its averments." *Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993) (citing *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990)). "In a facial challenge to jurisdiction, the court presumes all of the factual allegations concerning jurisdiction to be true and will grant the motion only if the plaintiff fails to allege an element necessary for subject matter jurisdiction." *Young Am. Corp. v. Affiliated Comput. Servs.*, 424 F.3d 840, 843-44 (8th Cir. 2005) (citing *Titus*, 4 F.3d at 593). In a factual challenge to jurisdiction, "there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Osborn*, 918 F.2d at 730. In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits

of jurisdictional claims. *Iowa League of Cities v. EPA*, 711 F.3d 844, 861 (8th Cir. 2013) (citing *Osborn*, 918 F.2d 724, 730). The plaintiff has the burden of proving jurisdiction exists. *Osborn*, 918 F.2d 730. "Once the evidence is submitted, the district court must decide the jurisdictional issue, not simply rule that there is or is not enough evidence to have a trial on the issue." *Id.* at 724.

"As no statute or rule prescribes a format for evidentiary hearings on jurisdiction, 'any rational mode of inquiry will do.'" *Brown v. Grand Island Mall Holdings, Ltd.,* No. 09–3068, 2010 WL 489531, at *2 (D. Neb. Feb. 8, 2010) (quoting *Osborn*, 918 F.2d at 730). "So long as the court has afforded the parties notice and a fair opportunity to be heard, an evidentiary hearing is unnecessary." *Id.* (citing *Johnson v. United States*, 534 F.3d 958, 964-65 (8th Cir. 2008)).

"Sovereign immunity is jurisdictional in nature." *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994). "Indeed, the 'terms of [the United States'] consent to be sued in any court define that court's jurisdiction to entertain the suit.'" *Id.* (quoting *United States v. Sherwood,* 312 U.S. 584, 586 (1941)); see also *Jones v. United States*, 16 F.3d 979, 981 (8th Cir 1994) (dismissing a §1983 action where federal actors acted under color of federal law under Fed.R.Civ.P. 12(b)(1)).

**II. Motion to Dismiss Pursuant to Fed. R. Civ. R. 12(b)(6)**

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[A]lthough a complaint need not include detailed factual allegations, 'a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'" *C.N. v. Willmar Pub. Sch., Indep. Sch.*

3

*Dist. No. 347*, 591 F.3d 624, 629-30 (8th Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  "Instead, the complaint must set forth 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* at 630 (citing *Twombly*, 550 U.S. at 570).

"'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Ritchie v. St. Louis Jewish Light*, 630 F.3d 713, 716 (8th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009)).  "'Courts must accept . . . specific factual allegations as true but are not required to accept . . . legal conclusions." *Outdoor Cent., Inc. v. GreatLodge.com, Inc.,* 643 F.3d 1115, 1120 (8th Cir. 2011) (quoting *Brown v. Medtronic, Inc.*, 628 F.3d 451, 459 (8th Cir. 2010)).  "A pleading that merely pleads 'labels and conclusions,' or a 'formulaic recitation' of the elements of a cause of action, or 'naked assertions' devoid of factual enhancement will not suffice." *Hamilton v. Palm*, 621 F.3d 816, 817-18 (8th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678).  The complaint's factual allegations must be "sufficient to 'raise a right to relief above the speculative level.'" *Williams v. Hobbs,* 658 F.3d 842, 848 (8th Cir. 2011) (quoting *Parhurst v. Tabor*, 569 F.3d 861, 865 (8th Cir. 2009)).

When ruling on a defendant's motion to dismiss, a judge must rule "on the assumption that all the allegations in the complaint are true," and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 555 & 556 (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974)).  The complaint, however, must still "include sufficient factual allegations to provide the grounds on which the claim rests." *Drobnak v. Andersen Corp.,* 561 F.3d 778, 783 (8th Cir. 2009).

4

Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

## DISCUSSION

### I. Municipal Liability

#### A. 42 U.S.C. § 1983 Claim against the City

Polak seeks to hold the City liable under § 1983 for the Officers' alleged use of excessive force in violation of the Fourth Amendment, in connection with his arrest. Section 1983 creates a private right of action to remedy violations of "rights, privileges, or immunities secured by the Constitution and laws of the United States." *Rehberg v. Paulk*, 566 U.S. 356, 361 (2012). The cause of action under § 1983 is available against "[e]very person who acts under color of state law to deprive another of a constitutional right." *Id.* (citation and internal quotation marks omitted).

A municipality cannot be liable under § 1983 on a *respondeat superior* theory. *Szabla v. City of Brooklyn Park, Minn.*, 486 F.3d 385, 389 (8th Cir. 2007) (citation omitted). "There must be a causal connection between the municipal policy or custom and the alleged constitutional deprivation in order to state a valid claim under § 1983." *Ulrich v. Pope Cty.*, 715 F.3d 1054, 1061 (8th Cir. 2013) (citing *City of Canton v. Harris,* 489 U.S. 378, 385 (1989)). "Liability for a constitutional violation will attach to a municipality only if the violation resulted from an official municipal policy, an unofficial custom, or a deliberately indifferent failure to train or supervise an official or employee." *Bolderson v.*

*City of Wentzville, Missouri*, 840 F.3d 982, 985 (8th Cir. 2016) (citing *Atkinson v. City of Mountain View, Mo.*, 709 F.3d 1201, 1214 (8th Cir. 2013)).

An "[o]fficial policy involves 'a deliberate choice to follow a course of action . . . made from among various alternatives' by an official who has the final authority to establish governmental policy." *Jane Doe A By and Through Jane Doe B v. Special School Dist. of St. Louis County*, 901 F.2d 642, 645 (8th Cir. 1990) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986)). For liability "on the basis of custom, there must have been a pattern of 'persistent and widespread' unconstitutional practices which became so 'permanent and well settled' as to have the effect and force of law." *Id.* at 646 (quoting *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978)).

To prevail against a municipality on a theory of failure to train or supervise, Polak must demonstrate deliberate indifference to the rights of persons with whom the untrained or unsupervised employee comes into contact. *See Connick v. Thompson,* 563 U.S. 51, 61 (2011) (citation omitted) (describing deliberate indifference in the context of failure to train). "Only then 'can such a shortcoming be properly thought of as a city policy or custom that is actionable under § 1983.'" *Id.* (quoting *Canton*, 489 U.S. at 389). "A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train." *Id.* (citation and internal quotations omitted). An isolated incident of alleged police misconduct is generally insufficient to establish a municipal policy or custom. *Ulrich*, 715 F.3d at 1061. ("Generally, an isolated incident of alleged police misconduct, such as [plaintiff] alleges occurred here, cannot, as a matter of law, establish a municipal policy or custom creating liability under § 1983.").

Polak alleges that the City had a policy of being deliberately indifferent to officers' violations of citizens' rights and failing to discipline officers who violate rights. Polak also alleges that the City failed to train or supervise officers in proper investigation techniques, appropriate use of force, and the duty to report misconduct.

Yet Polak fails to point to any specific official policies that caused the violation of his Fourth Amendment rights. He also fails to allege facts supporting the existence of any patterns of persistent and widespread unconstitutional practices that may indicate a custom. With respect to his claims of inadequate training and supervision, Polak fails to specify in what ways the training or supervision was inadequate and has not pointed to a pattern of similar constitutional violations by untrained or unsupervised employees that would put the City on notice of the alleged deficiencies. For these reasons, the §1983 claim against the City will be dismissed for failure to state a claim for which relief may be granted.

### B. State Tort Claims Against the City

The City seeks dismissal of Polak's tort claims arguing they are barred by sovereign immunity and that Polak failed to comply with the Political Subdivision Tort Claims Act (PSTCA)[1] requirement that the claim be submitted to the political subdivision before a lawsuit is filed. Polak argues that Defendants waived sovereign immunity when they removed the claims to federal court.[2] Because removal of the claims to federal court

---

[1] Neb. Rev. Stat. §§ 13-901-926.

[2] Removal to federal court does not waive sovereign immunity that would be available in state court. *See Kruger v. Nebraska*, 820 F.3d 295, 301 (8th Cir. 2016) (waiver of Eleventh Amendment immunity by removal to federal court does not equate to waiver of sovereign immunity from state law claims for which the state has not waived immunity); *Graham v. Nebraska*, No. 4:18CV3086, 2018 WL 6618409, at *5 (D.

did not waive sovereign immunity with respect to the tort claims, and the PSTCA does not waive sovereign immunity for claims arising out of battery, Polak's tort claims against the City will be dismissed.

"It is well-settled law in Nebraska that sovereign immunity deprives a trial court of subject matter jurisdiction for lawsuits in which . . . certain governmental units have been sued, unless the state consents to suit." *McKenna v. Julian*, 277 Neb. 522, 526–27, 763 N.W.2d 384, 389 (2009) (citations omitted). "Neb. Const. art. V, § 22, provides that the state may sue and be sued and that the Legislature shall provide by law in what manner and in what courts suits shall be brought." *Id.* (citation omitted). The Nebraska Supreme Court has interpreted this to mean that "the state is permitted to lay its sovereignty aside and consent to be sued on such terms and conditions as the Legislature may prescribe." *Id.* (citation omitted).

"The Legislature, through the [PSTCA], has removed, in part, the traditional immunity of subdivisions for the negligent acts of their employees." *Id.* (citation omitted). "[N]o suit shall be maintained against such political subdivision or its officers, agents, or employees on any tort claim except to the extent, and only to the extent, provided by the [PSTCA]." Neb. Rev. Stat. § 13-902. "The PSTCA prescribes the procedure for maintenance of a suit against a political subdivision and also provides a list of claims for which sovereign immunity is not waived." *McKenna*, 763 N.W.2d at 389 (citing *Geddes v. York County*, 729 N.W.2d 661, 665 (Neb. 2007); Neb. Rev. Stat. § 13-910). Claims

---

Neb. Dec. 18, 2018) (removal did not waive state's sovereign immunity with respect to plaintiff's Age Discrimination in Employment Act claim).

"arising out of . . . battery" are among those for which sovereign immunity is not waived. Neb. Rev. Stat. § 13-910(7)).

Under Nebraska law, the "intentional tort of battery is defined as 'an actual infliction of an unconsented injury upon or unconsented contact with another.'" *Britton v. City of Crawford*, 803 N.W.2d 508, 515 (Neb. 2011) (quoting *Bergman v. Anderson*, 411 N.W.2d 336, 339 (Neb. 1987)).

According to the Complaint, the Officers intended to cause a harmful or offensive contact with Polak and did in fact cause the harmful or offensive contact when Polak was intentionally "beaten" by the Officers. Compl., ECF No. 1-1. Page ID 5-6. The Officers' alleged actions clearly constituted battery and, thus, Polak's tort claims constitute claims "arising out of battery" for which sovereign immunity is not waived by the PSTCA. Thus, Polak's state tort claims against the City will be dismissed.[3]

## II. Individual Liability of the Officers

### A. 42 U.S.C. § 1983 Claim against the Officers

Laney presents a factual challenge to jurisdiction under Fed. R. Civ. P. 12(b)(1) with respect to Polak's § 1983 claims. Laney argues that the § 1983 claims against him should be dismissed because at the time of Polak's arrest Laney was working in his assigned duties as a deputized Special Deputy U.S. Marshal with the Metro Area Fugitive

---

[3] Because the PSTCA does not waive immunity for claims arising out of battery, it is not necessary for the Court to address Polak's compliance with the presentment requirement contained in the PSTCA.

Task Force (MAFTF)[4] and, therefore, not acting under color of state law. Polak did not dispute the facts asserted by Laney and did not address Laney's argument that he was not acting under color of state law. The Court finds that Laney was acting under color of federal law during Polak's arrest in October 2016. *King v. United States*, ___F.3d___, 2019 WL 908579 at *14 (6th Cir. 2019) ("[a]s a deputized federal agent, [the detective] carried federal authority and acted under color of that authority rather than under any state authority he may have had as a [city] Police detective"); *Harris v. Gadd*, No. 4:06CV-01510-SWW, 2008 WL 176384, at *3 n.7 (E.D. Ark. Jan. 16, 2008) (§ 1983 action against state police officer dismissed because conduct was committed in his capacity as a DEA federal drug task force officer). However, the Court will construe Polak's allegations against Laney for violations of constitutional rights as claims under *Bivens v. Six Unknown Federal Agents*, 403 U.S. 388 (1971).[5]

Polak presents two theories under which his Fourth Amendment rights were violated.

### 1. Fourth Amendment Excessive Force Claim

---

[4] Laney presented evidence demonstrating that during the October 2016 arrest, Laney was assigned to and working as a member of the MAFTF under the immediate supervision and control of the U.S. Marshals Service Task Force managers. White Decl., ECF No. 14-1, Page ID 51-53. The MAFTF is organized and operated by the U.S. Marshals Service and on October 6, 2016, the U.S. Marshal adopted a case for the MAFTF, which resulted in the arrest of Polak based on state arrest warrants. *Id*.

[5] "An action under *Bivens* is almost identical to an action under section 1983, except that the former is maintained against federal officials while the latter is against state officials." *Gordon v. Hansen,* 168 F.3d 1109, 1113 (8th Cir.1999) (per curiam) (citation omitted); *see also Solomon v. Petray*, 795 F.3d 777, 789 (8th Cir. 2015) ("As a general rule, *Bivens* claims and § 1983 claims are almost identical and involve the same analysis.")

Polak claims the Officers violated his Fourth Amendment right to be free from unreasonable searches and seizures. The Officers seek dismissal under Fed. R. Civ. P. 12(b)(6) arguing that Polak's Complaint fails to put them on notice of how their personal conduct violated his Fourth Amendment rights.[6] Laney also argues that he is entitled to qualified immunity.

The right to be free from unreasonable seizure protects against the use of excessive force in the apprehension or detention of a person. *Graham v. Conner*, 490 U.S. 386, 395 (1989). To establish a Fourth Amendment excessive force violation, "plaintiffs must show that the amount of force [ ] used was not reasonable under the circumstances." *Dooley v. Tharp*, 856 F.3d 1177, 1181 (8th Cir. 2017) (citing *Graham*, 490 U.S. at 396). The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application, it "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396 (citations omitted).

Polak alleges that during the apprehension, although none of the Officers commanded him to surrender, he attempted to surrender by turning around and raising his hands in the air. Compl., ECF No. 1-1, Page ID 5. Polak alleges that he was

---

[6] Defendants also argue that there is no evidence to support Polak's allegations that Iselin or Gormley were present when Polak was arrested. However, when deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6) the Court is required to accept all factual allegations contained in Polak's Complaint as true. *Twombly*, 550 U.S. at 555 & 556 (quoting *Scheuer,* 416 U.S. at 236 (1974). Polak's Complaint alleges that Iselin and Gormley participated in the arrest and, therefore, Defendants' argument is more appropriate at the summary judgment stage.

11

"handcuffed and beaten by the defendants: Kerry Iselin, Robert Laney, Clinton Gormley and John Does 1-100" and that as a result he "suffered numerous injuries" including injuries to the lower back and a black eye. Compl., ECF No. 1-1, Page ID 5. He alleges that the Officers took these actions despite the fact he did not pose a threat to the Officers or any other individual. *Id.*

Polak's references to the Defendants' collective actions do not deprive individual Defendants of notice regarding their alleged misconduct. Polak's Complaint makes it clear that during his arrest Iselin, Laney, Gormley, and additional officers were present and beat him despite his attempts to surrender. The Court finds that Polak has pled enough facts to state a plausible claim for relief.

The Court must next determine whether qualified immunity is appropriate at this stage of the litigation. "Qualified immunity shields a law enforcement officer from liability in a § 1983 action unless the officer's conduct violates a clearly established constitutional or statutory right of which a reasonable person would have known." *Dooley*, 856 F.3d at 1181. (citations omitted). The Complaint alleges that Polak attempted to surrender by raising his hands, and he posed no risk to the safety of the Officers or other individuals; and yet the Officers beat him, causing injuries, including a black eye. Based on the allegations contained in the Complaint, a reasonable officer would have known that beating a suspect, who was not a threat and was attempting to surrender, violated his clearly established right to be free from excessive use of force. Thus, the Court will not dismiss the § 1983 claim based on qualified immunity at this juncture.

    *2. Failure to Prevent Deprivation of Constitutional Rights*

Polak's Complaint alleges that "Defendants, John Does 1-100 and the City of Omaha each permitted the other to employ excessive force against Plaintiff . . . and failed to take reasonable and required steps to prevent the other from violating Plaintiff's constitutional rights although they had an official duty to do so." ECF No. 1-1, Page ID 8. An "officer may be liable if he does not intervene to prevent the use of excessive force when '(1) the officer observed or had reason to know that excessive force would be or was being used, and (2) the officer had both the opportunity and the means to prevent the harm from occurring.'" *Robinson v. Payton*, 791 F.3d 824, 829 (8th Cir. 2015), quoting *Nance v. Sammis,* 586 F.3d 604, 612 (8th Cir.2009)).

Polak alleges that he was beaten by Defendants Iselin, Laney, Gormley and Does 1-100. Thus, they were necessarily present at the time of the alleged violation of Polak's Fourth Amendment rights. Polak also alleges that they deliberately *failed* to act to prevent the violation. Nothing about the facts presented in the Complaint would lead to any conclusion other than the Officers knew Polak's rights were being violated and had the opportunity and means to prevent the harm. Thus, Polak's claims for "Failure to Prevent Deprivation of Constitutional Rights" will be not be dismissed at this time. See *O'Keefe v. Beatrice Police Dep't*, No. 8:16CV29, 2016 WL 2757695, at *4 (D. Neb. May 11, 2016) ("Plaintiff specifically alleges that defendants . . . were witnesses to [officers'] use of force and 'did nothing to intervene.' This is sufficient to allege a failure-to-protect claim"). Also, Laney's request for qualified immunity will be denied at this time because, based on the allegations in the Complaint, the Officers' failure to prevent or stop the alleged excessive use of force violated clearly established constitutional rights of which a reasonable officer would have known.

B. **State Tort Claims Against the Officers**

Polak has named the Officers in both their individual and official capacities. Thus, with respect to his state-law claims, this Court "'must determine whether the action against the individual official[s] is in reality an action against the [employing governmental entity] . . . .'" *McKenney v. Harrison*, No. 8:09CV129, 2009 WL 1606458, at *2 (D. Neb. June 3, 2009) (quoting *McKenna*, 763 N.W. at 388). It is apparent from the allegations in Polak's Complaint that the alleged actions of the Officers arose within the scope of their employment, and that Polak's state-law claims against the Officers are claims against them in their official capacities only. *See id.* (determining that state-law claims that arose from officers' conduct within the scope of their employment were against them in their official capacity only). Also, Polak's Complaint specifically states that in beating him, the Officers acted within the scope of their employment. Thus, Polak's state-law claims against the Officers in their individual capacities will be dismissed.

### III. Official Capacity Claims against the Officers

"A suit against a government officer in his official capacity is functionally equivalent to a suit against the employing governmental entity." *Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1256-57 (8th Cir. 2010) (citing *Baker v. Chisom*, 501 F.3d 920, 925 (8th Cir. 2007). "[A] suit against a government official in only his official capacity should be dismissed as redundant if the employing entity is also named." *King v. City of Crestwood, Missouri*, 899 F.3d 643, 650 (8th Cir. 2018) (citing *Veatch*, 627 F.3d at 1257). Here, the City is named as a defendant, thus, the claims against Iselin, Gormley and Does 1-100 in their official capacities as officers of the City are dismissed as redundant.

With respect to Laney, even construing the claims to be against him in his official capacity as a federal officer, the claims still fail. With respect to the state tort claim, to the extent Polak's tort claims may be construed as claims under the Federal Tort Claims Act (FTCA) they are dismissed for failure to satisfy the exhaustion requirement of 28 U.S.C. § 2675(a). *Allen v. United States*, 590 F.3d 541, 544 (8th Cir. 2009) (quoting *Walker v. United States,* 176 F.3d 437, 438 (8th Cir.1999)). With respect to the claim against Laney in his official capacity for violation of Polak's constitutional rights, "[i]t is well settled that a *Bivens* action cannot be prosecuted against the United States and its agencies because of sovereign immunity." *Buford v. Runyon,* 160 F.3d 1199, 1203 (8th Cir.1998). Thus, the official-capacity claims against Laney will be dismissed pursuant to Fed. R. Civ. P. 12(b)(1).

**CONCLUSION**

All state-law tort claims in Polak's Complaint, ECF No. 1-1, will be dismissed. All § 1983 claims against the City will be dismissed. All § 1983 claims against the Officers in their official capacities will be dismissed.

Accordingly,

IT IS ORDERED:

1. The Motions to Dismiss, ECF Nos. 10, 13, are granted, in part, as follows.

    a.   All state-law tort claims are dismissed;

    b.   All § 1983 claims against the City of Omaha are dismissed;

    c.   All § 1983 claims against the Officers in their official capacities are dismissed; and

    The motions are otherwise denied.

2. Plaintiff is granted leave to amend his Complaint on or before April 8, 2019.

3. In absence of an amended Complaint, the Defendants will file a responsive pleading to the Complaint on or before April 22, 2019.

Dated this 25th day of March 2019.

BY THE COURT:

s/Laurie Smith Camp
Senior United States District Judge